IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| SHAUN CHAPMAN, on Behalf of Himself and All Others Similarly-Situated,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED COAL COMPANY, LLC, WELLMORE COAL COMPANY, LLC, and WELLMORE ENERGY COMPANY, LLC,<br><br>*Defendants.* | **CLASS ACTION AND AND COLLECTIVE ACTION**<br><br>CASE NO.   2:21-cv-137<br><br>**JURY DEMANDED** |

**JOINT MOTION FOR ORDER GRANTING FINAL APPROVAL TO
RULE 23 CLASS ACTION SETTLEMENT**

Come Plaintiff Shaun Chapman ("Plaintiff") and Defendants United Coal Company LLC, Wellmore Coal Company, LLC, and Wellmore Energy Company, LLC (collectively "Defendants")[1] (with all parties collectively referred to as the "Parties"), by and through counsel, and move the Court to grant final approval to the Parties' proposed class settlement and certification of a Rule 23 class for settlement purposes pursuant to Rule of Civil Procedure 23 and the Kentucky Wages and Hours Act in this wage and hour action.

### I.   BACKGROUND

#### A.   Prior Proceedings and Background

In briefing the preliminary approval of this action, the Parties have already provided this Court with a detailed account of the background facts through preliminary approval of

---

[1]    As with the Joint Motion for Preliminary Approval, Defendants do not waive any defense or concede any facts and have agreed to class certification solely for the purpose of seeking to resolve this matter through settlement. Thus, Defendants join in the Motion.

the settlement, including: (1) identifying and explaining what claims were brought in this action which the settlement resolves; (2) discussing the proceedings prior to mediation, including (2) identifying and describing the class that was preliminarily certified; (3) the scope of the claims released; (4) the monetary terms of the settlement, including both the amount proposed to be paid under settlement to the Class, to the Named Plaintiff, and to Plaintiff's counsel; (5) an explanation of the settlement allocation and its relation to the Rule 23 Class members' recovery under the proposed settlement; (6) an overview of the notice and settlement administration procedures; and (7) an account of the parties' hard-fought, arm's-length settlement negotiations. Joint Motion for Order Preliminarily Approving Rule 23 Class Action Settlement, Ct. Doc. 61 (hereafter, the "Joint Motion for Preliminary Approval")[2] and settlement agreement attached thereto, Ct. Doc. 61-1 (hereafter, the "Settlement Agreement")[3]). Now, with notice complete, the Parties provide the following additional facts regarding the notice process and its results.

B.  **CAFA Notice**

As the parties notified the Court, in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, Defendants timely provided notice of the proposed class action settlement to the appropriate federal and state officials. Ct. Doc. 63. Defendants have received no objection relating to the proposed settlement or, indeed, any response to the CAFA notices.

---

[2] The Parties seek to not duplicate in this Motion discussion contained in the Joint Motion for Preliminary Approval, which was lengthy and addressed the Settlement Agreement and Rule 23 factors supporting preliminary certification of a settlement class and approval of the settlement. The parties refer the Court to and incorporate the Joint Motion for Preliminary Approval herein, and provide this Motion to address matters that have occurred since the Joint Motion for Preliminary Approval, as well as (A) factors relevant to the final approval process that were not addressed in the Joint Motion for Preliminary Approval and (B) approval of the settlement under the FLSA.

[3] Various terms are defined in the Agreement. These defined terms are at times used in this memorandum. The Parties refer the Court to the Agreement for the definition of defined terms.

### C. The Court-Approved Notice was the Best Notice Practicable Under the Circumstances and Satisfies Rule 23(c) and (e).

After the Court, on October 3, 2023 granted the Parties' Joint Motion for Preliminary Approval, preliminarily approved the proposed class settlement, and approved and directed notice to the class, notice was in fact provided to the class. Specifically, Defendants provided its contact information relating to the Class to Plaintiff's Counsel on October 6, 2023, and the Notice Materials were issued to the Class on October 13, 2023. Ct. Doc. 67 (a copy of the Notice Materials, as sent, is at Ct. Doc. 67-1). Therefore, the time for objections and for class members to opt-out elapsed at the end of the day on November 27, 2023, which was stated in the Notice Materials. *Id.*

The notice was effective. Of the one hundred and forty-two (142) class members to whom the Notice Materials were sent, only two (2) class members opted out of the class, only nine (9) of the notice mailings were returned by the United States Postal Service as undeliverable, and no class member submitted any objection to the proposed settlement. *Id.*[4] In other words, the Court-approved Notice reached the Rule 23 Class members, and, as explained below, they overwhelmingly favor the proposed settlement.

In short, the notice the Court approved was the best notice practicable under the circumstances and provided Rule 23 Class members desiring to object to the Settlement or exclude themselves with fair and adequate notice of its terms and of the Fairness Hearing scheduled for January 9, 2024.

---

[4] Ct. Doc. 67 reported that, through its filing on November 30, 2023, there were two timely opt-outs, no untimely opt-outs, no objections (timely or untimely), and seven notices returned by the Postal Service. Since that time, there have been no further opt-outs or objections received, and only two more notices received returned as undeliverable by the Postal Service.

### D. The Reaction of Absent Class Members was Overwhelmingly Positive with No Objections and Only Two Exclusions.

There were no objections to the proposed settlement and only two requests for exclusion. Ct. Doc. 67. Further, because the settlement is structured as a common fund settlement without a claims process, see Settlement Agreement, Ct. Doc. 61-1 at ¶ 4.3 (Page ID # 466), if the Court grants final approval to the settlement, then the one hundred forty (140) class members who did not opt-out will automatically be issued checks for their share of the settlement proceeds. In essence, of the total $1,498,824.80 to be paid under the settlement,[5] the two exclusions were only a relatively-minimal $1,574.90 (see Settlement Agreement, Ct. Doc. 61-1, at Exhibit D (Page ID # 492-495), showing David VanDyke settlement amount of $1,340.62 and Randall Ball settlement amount of $234.28[6]). Accordingly, 99.89% of the settlement funds will be paid and 98.59% of the Class will receive payments if the settlement is approved.

Put differently, the response of the Rule 23 Class members was overwhelmingly positive. This aggregate acceptance of the Settlement accords with the individual responses received by

---

[5] This amount includes all amounts to be paid under the settlement, including the $576,816.19 agreed to be paid to Class members, the separate amount to be paid to FLSA plaintiffs, attorney's fees and costs, and the service award to the named plaintiff. The percentage stated in the text is of this aggregate amount, but the percentage that will be paid remains very high even if only the amount to be paid to the Class is reviewed. Specifically, of that amount, if the Court grants final approval, $575,241.29 (99.73% of $576,816.19) will be paid to the Class.

[6] The settlement shares of Mr. VanDyke and Mr. Ball were, like all of the settlement shares, calculated in accordance with a formula developed based on the Parties' weightings of each class member's potential claim for travel time and off-the-clock work, which were in turn based on the actual amount of travel time deducted from the class member in question as well as the actual tenure in Defendant Wellmore Energy Company's employment of the class member in question during the relevant statute of limitations period. See Ct. Doc. 61 at 5-6 (PageID # 438-439). Under that formula, Mr. VanDyke and Mr. Ball's share of the settlement would have been somewhat lower than the average. Specifically, the average settlement was $4,062.09 (the $576,816.19 divided by the 142 Class members) (while the actual settlement of the remaining 140 remain the same and not be affected by the opt-outs, the average settlement amount of these persons will now be slightly higher – the $575,241.29 remaining after the two opt-outs divided by 140, or $4,108.87). Of course, because they opted themselves out of the Class, Mr. VanDyke and Mr. Ball will not be bound in any way by the Settlement under Rule 23, and this is expressly stated in the Agreement. Ct. Doc. 61-1 at ¶ 4.3 (Page ID # 466).

Plaintiff's counsel both before and after the Court granted Preliminary Approval. See Ct. Doc. 64 at 4-5, Ct. Docs. 64-7 and 64-8[7].

## II. LAW AND ARGUMENT

There is a strong federal policy encouraging settlement of class actions. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 371-72 (S.D. Ohio 2006); *see also UAW, et al. v. General Motors Corp.*, 497 F. 3d 615, 632 (6th Cir. 2007); *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979); *Airline Stewards & Stewardesses Assoc. v. American Airlines, Inc.*, 573 F.2d 960, 963 (7th Cir. 1978). "Before a district court approves a settlement, it must find that the settlement is 'fair, reasonable, and adequate.'" *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *2 (S.D. Ohio July 11, 2014) (Black, J.) (quoting *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11–cv1061, 2013 WL 2295880, at *4 (S.D. Ohio May 24, 2013); *see Satterly v. Airstream, Inc.*, No. 3:19-CV-107, 2020 WL 6536342, at *4 (S.D. Ohio Sept. 25, 2020) (stating the same). If a court finds that the settlement is fair, reasonable, and adequate, approval of the settlement is appropriate. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 381-82.

As the Parties noted in their preliminary approval briefing, the Sixth Circuit has stated the factors to be balanced when evaluating the fairness and reasonableness of a settlement: "(1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest." *Does 1-2 v. Déjà vu Services, Inc.*, 925 F.3d 886, 894 (6th Cir. 2019) (citing *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors*

---

[7] While Plaintiff's counsel has not requested that Class members who have contacted Plaintiff's counsel since the Notice Materials were issued provide written feedback on the proposed settlement, in general, Plaintiff's counsel has spoken with Class members and received uniformly positive feedback from those members of the Class with whom he has spoken.

*Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). "In reviewing a proposed class action settlement, the district court has wide discretion in assessing the weight and applicability of the relevant factors." *Carr*, 2022 WL 501206, at *3-4 (citing *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018)) (internal quotations omitted); *see Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992) (stating the court enjoys wide discretion when weighing and applying the factors used to determine whether a settlement is fair and reasonable).

The Parties provided extensive briefing and argument relating to all of these factors in their memorandum in support of preliminary approval of the settlement, with the exception of the sixth factor, the reaction of absent class members, which could only be addressed following the Court-approved notice. Ct. Doc. 61. Plaintiffs also briefed the allocation of settlement funds, explaining in detail how that allocation equitably distributes settlement funds to the Rule 23 Class members. *Id.* at PageID# 438-440. Finally, Plaintiffs have already provided detailed briefing of the reasonableness of Plaintiff's counsel's proposed fee and the service payments to the class representatives. *Id.* at PageID#: 440-447.[8] These issues were also all described in the Notice Materials sent to the Class. Ct. Doc. 67-1 at PageID # 842-843. Notably, the Notice Materials also contained an exhibit so that each Class member could see exactly how much he (and the other Class members) would receive as a gross payment if the Settlement were granted final approval. *Id.* at PageID# 846-849.

---

[8] As Plaintiff's counsel anticipated at the time of the Joint Motion for Preliminary Approval, Plaintiff's counsel has, since the filing of that motion, incurred substantial additional time and expenses in issuing the Notice Materials, responding to inquiries from Class members, and preparing for final approval. In addition, Plaintiff's counsel also prepared a Supplement to the Joint Motion for Preliminary Approval, which was to alert the Court to developments that had occurred since the filing of the Joint Motion for Preliminary Approval. Ct. Doc. 67. Finally, Plaintiff's counsel expects further time and expense in travelling to the Fairness Hearing, addressing any issues associated with final approval, and, if final approval is granted, in administering the settlement (under the settlement, Plaintiff is responsible for coordinating the delivery of checks). Plaintiff's counsel's time and expense to date are addressed in the Declaration of Plaintiff's Counsel submitted herewith.

Through the Court-approved notice process, the Rule 23 Class members have had an opportunity to consider the provisions of the settlement (including the payment of the preliminarily approved service payments to the class representative, and of attorneys' fees, costs, and expenses). The Notice Materials appropriately advised the Class members in plain language that they could, do nothing and thereby participate in the settlement,[9] request exclusion, or object. *Id.* at Page ID# 842, 844-845. Now, with notice complete, Plaintiffs are in a position to provide the Court with information regarding the reaction of absent class members. *Satterly*, 2020 WL 6536342, at *7 (citing *Wright*, 2018 WL 3966253 at *5) ("[t]he Court must also consider the reaction of the absent class members"). [10]

Here, as noted above, there were <u>no</u> objections and <u>only two</u> exclusions, and 140 of the 142 total Rule 23 class members would receive 99.89% available settlement funds, if the Court grants final approval to the class. Thus, this factor — and overwhelmingly positive reaction to the settlement — supports approval. *See Swigart*, 2014 WL 3447947, at *4 (Black, J.) (approving settlement where, of the 327 eligible FLSA opt-in Plaintiffs, all but one accepted the settlement; and of the 193 eligible class members, 152 accepted); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000) ("the Court considers the fact that not one class member objected to the settlement agreement to be most persuasive"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("That the overwhelming majority of class members

---

[9] The Notice Materials and Agreement both provide that, if a Class member does not request exclusion, the Class member will automatically be issued payment if the Settlement is granted final approval. Ct. Doc. 61-1 at PageID # 466 (¶ 4.3), Page ID # 469 (¶ 5.1.1), Ct. Doc. 67-1 at PageID # 842. The Notice Materials also specifically listed the gross amount (before required tax and other legally required withholding) that would be paid to each Class member, so that the member could see exactly how much was in question in assessing whether to participate (by not requesting exclusion), request exclusion, or object. Ct. Doc. 67-1 at PageID# 846-849.

[10] Even if substantial numbers of class members objected to a settlement, that would not by itself prevent a court from approving the settlement. *See Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991). Here, however, this is a non-issue as no objections at all were made.

have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is fair, 'reasonable, and adequate.'"); *In re Regions Morgan Keegan Derivative, & ERISA Litig.*, 2016 WL 8290089 at *6 (W.D. Tenn. Aug. 2, 2016) (finding favorable class reaction when no class members objected to the class settlement and only seven class members excluded themselves from the class); *In re Se. Milk Antitrust Litig.*, 2012 WL 2236692 at *4 (E.D. Tenn. June 15, 2012) (lack of objections – only one in the action – "in relation to the size of the class also highlights the fairness of the settlements to unnamed class members and supports approval of the settle").

Further, the factors previously addressed by the Parties at the preliminary approval stage support continue to support approval, Plaintiff's counsel continues to believe approval of the settlement is in the best interest of the Class, and the Parties continue to request that the Court grant final approval to the Parties' Agreement.

### III. CONCLUSION

For all these reasons, the Parties request that, after the Fairness Hearing scheduled for January 9, 2024, the Court issue an Order finally certifying the requested settlement class and approving the Settlement. A proposed Order[11] is submitted herewith.

---

[11] The parties agreed to this form of proposed Order as part of their Settlement Agreement. Ct. Doc. 61-1 at PageID # 465 (¶ 3.4.1) (Parties agreeing to submit form of proposed order granting final approval); PageID # 487-490 (form of proposed order)).

Respectfully submitted,

<u>/s/Mark N. Foster</u>
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
MFoster@MarkNFoster.com
(270) 213-1303
*Counsel for Plaintiff*

<u>/s/Joseph U. Leonoro, with permission</u>
<u>By Mark N. Foster</u>
Jonathan R. Ellis
Joseph U. Leonoro
Steptoe & Johnson PLLC
P.O. Box 1588
Charleston, WV 25326-1588
Jonathan.Ellis@steptoe-johnson.com
Joseph.Leonoro@steptoe-johnson.com
*Counsel for Defendants*