**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| SHAUN CHAPMAN, | ) | |
| on Behalf of Himself and All | ) | |
| Others Similarly-Situated, | ) | **CLASS ACTION AND** |
| | ) | **AND COLLECTIVE ACTION** |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | CASE NO.    2:21-cv-137 |
| v. | ) | |
| | ) | |
| UNITED COAL COMPANY, LLC, | ) | **JURY DEMANDED** |
| WELLMORE COAL COMPANY, LLC, | ) | |
| and WELLMORE ENERGY COMPANY, LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT UNDER 29 U.S.C. § 216(b)

Come Plaintiff Shaun Chapman ("Plaintiff") and Defendants United Coal Company LLC,

Wellmore Coal Company, LLC, and Wellmore Energy Company, LLC (collectively

"Defendants")[1] (with all parties collectively referred to as the "Parties"), by and through counsel,

and move the Court to enter an Order approving their settlement under 29 U.S.C. § 216(b).

### I.    Background.

This is a wage and hour case in which Plaintiff asserts claims under the Fair Labor

Standards Act ("FLSA") and the Kentucky Wages and Hours Act ("KWHA").   The parties

ultimately reached a settlement after substantial discovery, mediation before an experienced

mediator, and extensive negotiation of the terms of the settlement.   The process by which the

parties reached that agreement, which also proposes to resolve the KWHA claims under Rule 23,

has been extensively addressed by the Parties in their Joint Motion for Order Preliminarily

---

[1] Defendants deny that they are liable, but, acknowledging the parties' dispute, have agreed to settle this matter. Therefore, Defendants join this motion without conceding Plaintiff's allegations.

Approving Rule 23 Class Action Settlement (Ct. Doc. 61) and Joint Motion for Order Granting Final Approval to Rule 23 Class Action Settlement (Ct. Doc. 68) (these together are the "Rule 23 Motions"), and the Parties incorporate and assume the Court's familiarity with that discussion herein as they address issues particular to the FLSA claims of Plaintiff and the FLSA opt-in Plaintiffs in this matter.

Unlike Rule 23, the FLSA provides for an "opt-in" procedure under which plaintiffs may join an FLSA collective action by filing a consent with the Court under 29 U.S.C. § 216(b). *Clark v. A&L Homecare and Training Ctr, LLC*, 68 F.4th 1003 (6th Cir. 2023). Before *Clark*, this Court, like other Courts in the Sixth Circuit, followed the approach to FLSA notice, or "conditional certification"[2] established by *Lusardi v. Xerox Corp.,* 118 F.R.D. 351, 361 (D.N.J. 1987). *Id.*; *Comer v. Wal-Mart Stores, Inc*., 454 F.3d 544 (6th Cir. 2006); *Askew v. Inter-Continental Hotels Corp.*, 620 F. Supp. 3d 635, 636 (W.D. Ky. 2022) (Beaton, J.). This process first requires plaintiffs move to conditionally certify the collective action through submitting evidence establishing "a modest factual showing" that their "position is similar, not identical, to the positions held by putative class members." *Comer*, 454 F.3d at 546–67.

Plaintiff sought, early on in this litigation, notice to be issued to Defendants' underground coal miners. Ct. Doc. 19. Defendants responded in opposition, arguing that notice should not be

---

[2]     The Sixth Circuit in *Clark* cautioned that the term "conditional certification" should not be used as, in an FLSA action, the issue is notice to similarly-situated employees, and not "certification" of any group. Plaintiff and the Court used the term "conditional certification" in filings made in this case, as that terminology was common prior to *Clark*. See Ct. Doc. 19, 26. Courts post-*Clark* have held that the fact that a district court took actions prior to *Clark* relating to notice to potential FLSA plaintiffs in accordance with pre-*Clark* caselaw, and without following the *Clark* standard (which had not yet been articulated) is not a basis for the Court to dismiss FLSA Plaintiffs who joined the action based on notice issued under that pre-*Clark* caselaw. *See McClurg v. Dallas Jones Enterprises, Inc.*, No. 4:20-CV-201-RGJ, 2023 WL 8604177, at *2 (W.D. Ky. Dec. 12, 2023) (W.D. Ky. Dec. 12, 2023) (where "court-facilitated notice was made in good faith, approved by both parties, and was consistent with the law at the time[, e]ven if original notice would have been improper under the *Clark* standard, *Clark* does not necessitate the invalidation of any subsequent consent forms"), citing *Stewart v. First Student, Inc.*, No. 1:22 CV 2009, 2023 WL 6662979, at *2 (N.D. Ohio Oct. 12, 2023).

issued because, *inter alia*, unlike Plaintiff, many of the underground coal miners at the Wellmore mine had entered into arbitration agreements by which they agreed to arbitrate any claims only individually and to not to participate in any class or collective action. Ct. Doc. 20. After Plaintiff filed a reply, the parties ultimately agreed to request that the Court order notice under the FLSA to those employees who had not entered into arbitration agreements, and the Court, after review by the Magistrate, ultimately granted this request. Ct. Docs 21-26.

Accordingly, a notice was issued. In response, thirty-three individual coal miners filed consents pursuant to join the action. Ct. Docs. 27-33, 35-43, 45, 47, 50-53, 55.[3] Therefore, including Plaintiff, there were thirty-four miners with FLSA claims in this action; these claims overlapped with, but were separate from, the state law claims of Plaintiff, with his request to proceed on behalf of a Rule 23 class KWHA class. In short, the FLSA Opt-In Plaintiffs' claims were part of the action by virtue of the Opt-In Plaintiffs having joined the action, *Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1530 (2013) ("employees…become parties to a collective action only by filing written consent with the Court, § 216(b)"), and the FLSA statute of limitations was tolled thereby. 29 U.S.C. §§ 255, 256. Therefore, while the FLSA Plaintiffs theoretically ran the risk that the Court could conclude after the end of discovery that they could not proceed together as a collective action (and would therefore have to file individual FLSA actions), each FLSA Plaintiff had a validly-tolled claim under the FLSA regardless of what occurred with respect to the Rule 23 request under state law.

In light of these distinctions, during the mediation and post-mediation settlement discussions, the Parties agreed to separate sub-amounts of the total settlement to be applied to the FLSA Plaintiffs' claims, on the one hand, and the Rule 23 Class (which was composed of named

---

[3]     In filing consents with the Court, Plaintiff assigned each Plaintiff a "Consent Number," which are reflected in the cited Notices of Filing Consents.

plaintiff Shaun Chapman and miners who had not filed an FLSA consent), on the other. Ct. Doc. 61-1. Specifically, the parties allocated the net settlement amount to be paid to each FLSA Plaintiff and each Rule 23 Class Member in accordance with a formula reached as a compromise between Plaintiffs and Defendants under which one half of the settlement proceeds to be paid to these persons were allocated in accordance with a weighting between off-the-clock claims and travel time deduction claims developed by Defendants, and one half was allocated based on a weighting of those claims developed by Plaintiffs. See Ct. Doc. 61 at 5.

Because the weighting for purposes of analyzing the settlement value of the two different types of claims required evaluation of the tenure of each person in the employment of Defendant Wellmore Energy Company, LLC and the amount of travel time deducted from each of the persons, the parties exchanged and evaluated extensive payroll information, including for each FLSA Plaintiff and each Rule 23 Class Member. Therefore, the amount that each FLSA Plaintiff will receive under the settlement varies as it is based on the actual amount of travel time compensation deducted from that particular FLSA Plaintiff and is based on the actual tenure of that particular FLSA Plaintiff during the applicable period (from five years prior to the filing of the lawsuit until the date of mediation). *Id.* at 6.

Further, the parties agreed to boost the weight attributed to the claims of persons who had affirmatively joined the lawsuit to pursue claims under the FLSA (named plaintiff Shaun Chapman and the FLSA Plaintiffs) to account for the settlement risk incurred by the Rule 23 class members of the possibility of a Rule 23 class not being certified in the event this litigation proceeds without a settlement (the FLSA Plaintiffs did not face this risk, instead, each already had an FLSA claim pending before the Court). *Id.*

As a result, the exact amount each FLSA Plaintiff would receive (before legally required deductions) could be and was set out in detail in the Settlement Agreement. The amount to be received by FLSA Plaintiffs varied from $2,673.01 to $28,698.90, reflecting the different tenures of and amounts of travel time deducted from the various FLSA Plaintiffs. The average award was $16,226.40[4], which was significantly higher than the average Rule 23 Class Member award of $4,005.67 (reflecting both the boost applied to less-risky FLSA claims and the overall substantially longer average tenure of and larger amounts of travel time deducted from FLSA Plaintiffs (which makes sense, as persons with larger claims are more likely to "opt-in" to the litigation)).

After the Settlement Agreement was finalized, Plaintiff's Counsel conveyed a copy of the executed Agreement to all of the FLSA Plaintiffs. The FLSA Plaintiffs, through their representative, Mr. Chapman, have approved the settlement, but, in addition, none has objected to the settlement. To the contrary, the FLSA Plaintiffs are eager for the settlement to be approved so that they can receive the proceeds.

## II.     Law and Argument

### A.     Approving a Settlement Under the FLSA Upon the Parties' Request is Appropriate.

The circuits are split on whether the settlement of FLSA claims requires Court approval. *Compare, e.g., Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 256 (5th Cir. 2012) (no Court approval required), *with Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (requiring Court approval) and *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (same). The Sixth Circuit has not decided the issue. One district court

---

[4]     This amount is the $532.541.78 allocated to FLSA Plaintiffs under ¶ 4.2 of the Settlement Agreement (Ct. Doc. 61-1 at PageID # 466) and listed by FLSA Plaintiff in Exhibit A to the Settlement Agreement (Ct. Doc. 61-1 at PageID# 479), plus the $19,155.84 allocated to Plaintiff Shaun Chapman, which was listed in Exhibit D to the Settlement Agreement (Ct. Doc. 61-1 at PageID # 492, divided by 34.

in this Circuit has reached the persuasive conclusion that Court approval is not required. *See Askew v. Inter-Continental Hotels Corp.*, 5:19-cv-24, 2022 WL 3161927 (W.D. Ky. Aug. 8, 2022); *see also Alcantara v. Duran Landscaping, Inc.*, No. 2:21-cv-03947, 2022 WL 2703610, at *1 (E.D. Pa. July 12, 2022). But courts in this district have regularly found it appropriate to review FLSA settlements for approval at the Parties' request. *See, e.g., Estes v. Vanderpool Constr. & Roofing, Inc.*, No. 17-CV-58, 2018 WL 3910999, at *1 (E.D. Tenn. July 30, 2018), report and recommendation adopted, No. 17-CV-58, 2018 WL 3910889 (E.D. Tenn. Aug. 15, 2018).

This Court has recently held that, until the Sixth Circuit addresses the issue, out of an abundance of caution and at the parties' request, the Court will review the Parties' settlement. *Reed v. M3K, LLC*, Ct. Doc. 40 in No. 3:22-cv-175 (E.D. Tenn. December 5, 2023). As approval under the FLSA is a separate issue from approval under Rule 23, the Rule 23 procedures do not apply to considering approval under the FLSA; therefore, for instance, the Court may approve an FLSA settlement based on the written filings without a hearing. *Id.* (approving settlement under the FLSA without hearing).[5] As provided for in their Agreement, the parties request that the Court approve their settlement.

### B. The FLSA Settlement Approval Standard.

Where a Court does undertake to review a settlement of a private FLSA claim, the Court reviews the proposed settlement to determine whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1355; *see also Bartlow v. Grand Crowne Resorts of Pigeon Forge*, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012); *Wills v. Cellular Sales of Tenn., LLC*, 2014 WL 8251539, at *1 (E.D. Tenn. Aug. 18, 2014);

---

[5] The Parties request that, if possible, the Court consider the approval of the settlement under the FLSA either prior to or concurrent with the Fairness Hearing currently scheduled for January 9, 2024 to consider granting final approval to the Rule 23 class settlement aspect of the settlement.

*Simmons v. Mathis Tire & Auto Serv., Inc.*, 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015). When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Moreover, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

      **C.     There is a Bona Fide Dispute under the FLSA.**

      The purpose of the "bona fide" dispute requirement is to prevent employers from forcing employees to compromise their wage claims (i.e., accept in "settlement" less than they could recover through litigation) in circumstances where there is no actual dispute about whether the employee was owed overtime compensation. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 709-710 (U.S. 1945) ("[t]o permit an employer to secure a release [of a 29 U.S.C. § 216(b) liquidated damages claim] from the worker who needs his wages promptly will tend to nullify the deterrent effect which Congress plainly intended that Section 216(b) should have"). This prevents the employer from "contracting around" the requirements of the FLSA. *Barrentive v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate").

      Here, there was a very considerable, and very bona fide, dispute. Plaintiff, on behalf of himself and other FLSA plaintiffs who opted-in to the litigation, asserted that Defendants deprived them of substantial wages by requiring them to perform substantial work "off the clock" before and after the work for which they were paid. Specifically, Plaintiffs asserted that they should have

been paid for gathering, inspecting, calibrating and donning (and at the end of the shift doffing, placing on charge and/or storing) equipment, tools, supplies and protective clothing needed for their work as underground coal miners in Defendant's coal mine. Plaintiff asserted that this activity was work and should have been compensated, but was not compensated.

Plaintiff also asserted that Defendants began paying Plaintiffs after they clocked in above-ground and attended a required daily safety meeting, but then deducted time from Plaintiffs' pay for a subsequent period of underground travel time (the estimated amount of time it took for miners to travel in vehicles underground (often miles) from the underground portion of the mine entrance to the working face where coal was actively being extracted. Plaintiffs asserted that the deduction of this time was improper because the underground travel time was compensable under the FLSA.

Plaintiffs asserted that they regularly worked overtime, and, thus, that the time for which they were improperly not credited was also overtime work that should have been paid at an overtime rate of pay. As a result of Defendants' policies, Plaintiffs asserted Defendants were liable to Plaintiffs for the unpaid overtime wages plus liquidated damages in an equal, additional amount, for the maximum, three-year FLSA statute of limitations, and for Plaintiff's reasonable attorney's fees and expenses. 29 U.S.C. § 216(b),

Defendants contested the allegations in this litigation. Defendants argued that (A) employees did not perform work prior to clocking in or after clocking out, (B) that any activities performed prior to clocking in or after clocking out were *de minimis* and non-compensable, (C) that the underground travel time was non-compensable, including under 29 C.F.R. § 790.5(b)[6], (D)

---

[6] Plaintiff contended that the safety meeting attended prior to going underground, which was paid, was required and compensable, and therefore made the underground travel time compensable under the continuous workday doctrine, as explained in *IBP v. Alvarez*, 546 U.S. 21 (2005). Plaintiffs also contended that the pre-shift, aboveground gathering of required supplies and equipment (including gathering, inspecting and calibrating specialized safety equipment required by Mine Safety and Health Administration regulations) was compensable and therefore started the continuous workday. Thus, Plaintiff intended to assert that the minimal 29 C.F.R. § 790.5(b) analysis, adopted in the 1940s, was neither consistent with Defendants' actual operation or the realities of modern coal mining, which

that miners would ultimately be found to not be similarly-situated, and thus unable to proceed in a collective action, and (E) to the extent there was any violation, it was made by Defendants in good faith, and should not subject Defendants to liability, or that it should not subject Defendants to liability for liquidated damages.

In other words, absent the Settlement, this litigation was likely to result in the parties contesting each and every one of these issues under the FLSA. Hence, there can be no question that the parties' Settlement resolves bona fide disputes under the FLSA and contains terms that seek to avoid protracted and hotly contested litigation. See *Lynn's Food*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching"). Plaintiff and Defendant are certainly at arms-length, and have both dealt and will continue to deal blows to each other in this non-contrived, *bona fide* contested litigation if the Court does not approve the settlement.

### D. The Settlement of the FLSA claims is fair, reasonable, and adequate.

Accordingly, in light of the parties' dispute, the next step is to determine whether the parties' proposed resolution of the dispute is reasonable. Courts determine whether an FLSA settlement is reasonable by examining a number of factors. Specifically, courts consider (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; and (5) the public interest in settlement. *Ritterbeck v. Akron Family Restaurant*, 2016 WL 6947018 at *1 (N.D. Ohio

---

Plaintiff asserts now depends on extensive pre-shift work associated with many specialized technologies, including underground tracking devices, text pagers, multi-gas detectors, self-contained self-rescuers (which, if functioning, provide a miner with a supply of breathable air in the event of underground fire or other emergency) and proximity detection systems (which interact with large underground mining equipment and are designed to automatically shut off the equipment if it comes too close to a miner).

2016), citing *Crawford v. Lexington-Fayette Urban Cnty,* 2008 WL 4724499, at *3 (E.D. Ky. 2008), *itself citing Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

Here, the factors weigh in favor of approval. First, there is no fraud or collusion. Absent evidence to the contrary, no fraud or collusion should be presumed to exist. *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-44-DJH, 2016 WL 7320890, at *3 (W.D. Ky. Dec. 15, 2016). There is no such evidence in this case. To the contrary, the parties reached a settlement only after Plaintiff initiated litigation against Defendant, sought and obtained notice to current and former employees, sought substantial discovery, and after the parties vigorously contested the validity of Plaintiff's claims and Defendants' defenses.

Further, the amount provided in the settlement reasonably compensates Plaintiff and the opt-in Plaintiffs for their claims asserted in this case. Plaintiffs faced considerable risks, including being unable to establish the compensability of pre-shift and post-shift activities, or the travel time being held non-compensable under the language of 29 C.F.R. § 790.5(b). However, the FLSA Plaintiffs recover substantial portions of the amount they could expect to recover on their best day at trial through the settlement. Further, the settlement is designed to hasten payment to Plaintiffs and thereby reduce Plaintiffs' risk that Plaintiffs will ultimately prevail, but lose part of the real value of the claim to high inflation and the time value of money (Plaintiffs are also concerned that, even worse, a judgment could be obtained but uncollectible due to Defendants' business realities, which are beyond Plaintiff's control[7]).

---

[7]     Defendants do not join in or address Plaintiff's commentary regarding Plaintiff's concerns regarding Defendants' ability to pay a judgment following litigation; Defendants' financial status is beyond the scope of this motion and not addressed by Defendants herein.

Accordingly, in light of extensive analysis, and based on Plaintiff's counsel's experience and review of the litigation as a whole[8], Plaintiff's counsel concluded at mediation (and is still the opinion) that the settlement represents a fair compromise of Plaintiffs' position and an excellent result for Plaintiffs. *See Barr v. Cleveland Metroparks*, No. 1:17-CV-1390, 2018 WL 692025, at *2 (N.D. Ohio Feb. 2, 2018) (approving settlement where it was "the result of arms-length negotiations between parties that were represented by able counsel").

The complexity, expense, and likely duration of the litigation also weigh in favor of approval. *See Cooper v. Winking Lizard, Inc.*, No. 1:16CV1513, 2017 WL 4465759, at *3 (N.D. Ohio Oct. 4, 2017) (approving pre-certification settlement of FLSA claims in part because of "the factual and legal complexity of the case"). If the case were to proceed, Plaintiff and Defendants would have to litigate numerous issues, all of which litigation would be resolved and avoided by approval of the settlement.

Further, the litigation has advanced to a point at which Plaintiffs would be required to make significant additional outlays of litigation-related expenses (beyond the more than $5,000.00 already incurred) to proceed. Specifically, but for the settlement, Plaintiff would ultimately need to advance substantial expenses relating to depositions, which would include depositions of members of Defendants' management and, depending on Defendants' litigation strategy, of plaintiffs and potentially other hourly employees. Plaintiffs could seek to recover these expenses from Defendants, but recovery would not come until the end of the case, and would be subject to risks. Moreover, the FLSA Plaintiffs' own time, energy, and distraction from their work to

---

[8] Plaintiff's counsel has thoroughly investigated the potential claims in this matter, including through extensive review of the documents, discussion with each plaintiff and several other witnesses, and legal research, and remains of the opinion that it is in the best interests of the plaintiffs that this settlement be approved, and requests that the Court approve the settlement.

participate in discovery would likely not be recoverable, as such expenditures are simply part of litigation and not contemplated as compensable "expenses" that may be shifted under a fee statute.

And even if Plaintiff did prevail, the litigation would further delay Plaintiffs' recovery. If the Court did not approve the settlement, and Plaintiff proceeded with this action until recovery, the inevitable delays associated with litigation (including potential appeal) would mean that actual payment to Plaintiff would likely be a year or two, or even longer, from now. The settlement, in contrast, provides for Plaintiff's prompt receipt of payment following Court. *See Cooper v. Winking Lizard, Inc.*, No. 1:16CV1513, 2017 WL 4465759, at *3 (N.D. Ohio Oct. 4, 2017) (approving settlement in part because "'the certainty and finality that comes with settlement also weighs in favor of' approving a fair and reasonable settlement"), quoting *Dillworth v. Case Farms Processing*, No. 5:08-cv-1694, 2010 WL 776933, at *6 (N.D. Ohio 2010).

Finally, the likelihood of success favors approval. Litigation is inherently risky, and the settlement provides the parties with certainty. Plaintiffs could theoretically receive more at trial, but it is also possible that they would receive less (including given all of the other various uncertainties of litigation, including the possibility of a jury accepting Defendants' management's arguments regarding what it contends is at most the *de minimis* nature of the disputed pre-shift activities). On balance, the settlement returns a good result to Plaintiffs. Indeed, while it would be appropriate for this Court to approve this Settlement even if it could not predict which party would prevail at trial, *See Barr*, 2018 WL 692025, at *2 ("[w]hile the Court is not in a position to assess the likelihood of success on the merits, as the case was still in the early stages when settlement was reached, the Court finds that the other relevant factors weigh in favor of approving the settlement."), the award to Plaintiff of the amount proposed to be paid through the settlement is quite substantial, and supports approval of the settlement as reasonable.

### E.     Plaintiff' Counsel's Fee is Reasonable and Should Be Approved.

Finally, in an action under 29 U.S.C § 216(b), the award of attorney's fees, which is mandatory, *Ross*, 2016 WL 7320890, at *5, should be approved.  The amount of those fees, however, is within the Court's discretion.  *Id.*  The fee must be determined to be reasonable – that is, that it does not excessively compensate counsel at the expense of the represented employees. *Id.*  A reasonable fee is one that can attract competent counsel but does not produce windfalls.  *Id.*

The Parties have addressed the proposed attorney's fee and expenses in the Rule 23 Motions, and incorporate that discussion.  However, as "[t]he Sixth Circuit has permitted fee awards ranging from 10 to 50 percent," see *In re: Amazon.com, Inc. Fulfillment Center Fair Labor Standards Act (FLSA) and Wage and Hour Litigation*, No. 228 in United States District Court for the Western District of Kentucky, No. 3:14-md-02504-DJH (2016); *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 U.S. Dist. LEXIS 174, at *10-11 (S.D. Ohio March 9, 2007) (finding 29 percent fee to be "modest and . . . below what is often awarded by district courts in th[e Sixth] Circuit" and citing various cases in support of that conclusion), the Parties submit that the award to Plaintiff' counsel of fees of approximately 24.61 % of the total settlement is appropriate and reasonable, and should be approved.

### III    Conclusion

For all these reasons, the Court should approve the Parties' Settlement under the FLSA and caselaw relating to such approval.  In the alternative, if the Court finds that approval is not required under principles contained in or similar to those stated in *Askew v. Inter-Continental Hotels Corp.*, 5:19-cv-24, 2022 WL 3161927 (W.D. Ky. Aug. 8, 2022), the Court should enter an Order to that effect.

Respectfully submitted,

/s/Mark N. Foster
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
MFoster@MarkNFoster.com
(270) 213-1303
*Counsel for Plaintiff*

/s/Joseph U. Leonoro with permission by Mark N. Foster
Jonathan R. Ellis
Joseph U. Leonoro
Steptoe & Johnson PLLC
P.O. Box 1588
Charleston, WV 25326-1588
Jonathan.Ellis@steptoe-johnson.com
Joseph.Leonoro@steptoe-johnson.com
*Counsel for Defendants*